20-0407

Filed 4/28/2020 6:15 PM
Sherry Griffis
District Clerk
Harrison County, Texas

Lori Hightower
Deputy

CAUSE NO. 20-0407

| | | |
|---|---|---|
| **Tanos Exploration II, LLC** § | | **IN THE DISTRICT COURT** |
| § | | |
| **Plaintiff,** § | | |
| v. § | | |
| § | | **_____ JUDICIAL DISTRICT** |
| **PetroTech Solutions, LLC** § | | |
| § | | |
| **Defendant.** § | | |
| § | | **HARRISON COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Tanos Exploration II, LLC ("Plaintiff" or "Tanos") files this Original Petition and Request for Declaratory Judgment against Defendant PetroTech Solutions, LLC ("Defendant" or "PetroTech") and respectfully shows the Court the following.

### DISCOVERY CONTROL PLAN

1. Discovery in this case should be conducted under Discovery Level 3 in accordance with Texas Rule of Civil Procedure 190.4.

### RULE 47 STATEMENT

2. In accordance with Rule 47 of the Texas Rules of Civil Procedure, this is a claim for monetary relief over $1,000,000, including a demand for judgment for all other relief to which Plaintiff may show itself be entitled, including damages of any kind, penalties, costs, expenses, attorneys' fees, pre-judgment interest and post-judgment interest.

### PARTIES

3. Plaintiff Tanos is a Texas limited liability company with its principal place of business in Tyler, Texas.

Exhibit A

4. Defendant PetroTech is a Louisiana limited liability company with its principal office located at 511 Main Street, Minden, LA 71055.

## JURISDICTION

5. The subject matter in controversy is within the jurisdictional limits of this court. This is a civil matter in which the amount in controversy is more than $500, exclusive of interest. TEX. GOV'T CODE § 24.007. No other Texas court has exclusive jurisdiction.

6. This Court has personal jurisdiction over PetroTech because PetroTech regularly does business in Texas (with operational centers in Jourdanton, Texas and Henderson, Texas), including by providing oilfield services at Tanos's Texas wells for many years, and this lawsuit arises out of these Texas business activities.

## VENUE

7. Venue is proper in Harrison County because, as described below, a substantial portion of the events giving rise to Tanos's claims occurred in Harrison County. TEX. CIV. PAC. & REM. CODE § 15.002(a)(1).

## FACTS

8. This is a breach of contract, products liability, and negligence case involving a surface blowout on one Tanos well, and severe corrosion of approximately forty other Tanos wells, all caused by PetroTech's substandard and defective oil-and-gas well products and services. As a result, Tanos has spent millions of dollars controlling the blowout caused by PetroTech and remediating the corrosion caused by PetroTech's products at other wells, which efforts are ultimately projected to cost Tanos more than $10 million.

9. Tanos is an oil and gas exploration and development company based in Tyler, Texas that owns and operates over 1,600 wells in East Texas and North Louisiana. PetroTech is

a manufacturer and purveyor of chemicals used in the oil-and-gas production process. PetroTech also provides oilfield services related to those chemicals.

10. Tanos and PetroTech entered into an MSA in 2015. PetroTech agreed to provide oilfield chemicals and services to Tanos in exchange for cash payment. More specifically, under the MSA, PetroTech would provide its anti-corrosion and scale-inhibitor chemicals to Tanos's wellheads on a regular basis, which is a standard part of well maintenance. In the MSA, PetroTech warranted that the "goods sold to [Tanos] … will substantially comply with [Tanos's] specifications and be free from defects in material and workmanship." In addition, PetroTech warranted in the MSA that it would "perform all services in a workmanlike manner in accordance with generally accepted industry practices applicable to the services."

11. At 5:00am on December 25, 2019, a breach occurred at Tanos's Callison-Sinclair-Joie #1H well (the "CSJ Well"), located in Harrison County, which resulted in a catastrophic wellhead blowout that required the evacuation of 55 nearby residents. Tanos immediately worked with state and local officials to establish an area emergency action plan and took steps to contain the breach. At the height of activity, more than 90 persons were involved in this containment project. Eventually, after significant effort and expense, Tanos personnel were able to contain the breach. Tanos had to remove the wellhead, install a control stack, rig up coil tubing, and then dynamically kill the well with heavy fluid. Once the well was killed, Tanos then had to install a new tubing head so that operations could continue. This containment and repair effort lasted approximately 17 days and was extremely costly, not counting the lost reserves in the blowout or lost production while the well was out of control and not operational. Additionally, due to the danger posed by the blowout, Tanos had to shutdown another nearby well for safety reasons.

12. Once the blowout was contained, Tanos began to investigate its causes. Tanos soon determined that the breach was caused by the failure of a ring-gasket seal on the well's tubing head. Upon inspection of the tubing head, Tanos immediately recognized that significant chemical corrosion had caused the failure.

13. It is common practice for well operators to inject corrosion- and scale-inhibitor chemicals into their wellheads to prevent corrosion and scaling due to the high dissolved solids in the water and the $CO_2$ present in the gas. Tanos utilized several such chemicals, all provided by PetroTech. PetroTech had recommended these chemicals and the chemical-injection rates Tanos applied after performing an analysis of the gas and water from Tanos's wells.

14. The corrosion that caused the ring-gasket failure was visibly and unmistakably located at the injection site for PetroTech's chemicals. Tanos compared wellheads on which Tanos had utilized PetroTech's products with those on which it had not. The difference was remarkable. Wellheads that had received chemicals from other suppliers were functioning normally with no corrosion—while wellheads using PetroTech's chemicals, like the CSJ Well, were on the brink of catastrophic failure due to extreme corrosion.

15. In light of this evidence, Tanos engaged a laboratory to test the corrosiveness of the PetroTech chemicals on steel samples. The testing confirmed that the corrosion- and scaling-inhibitor chemicals recommended and provided by PetroTech caused an extremely high rate of corrosion and indicated that these chemicals caused the blowout at the CSJ Well and the damage to other Tanos wells. While PetroTech's products were marketed and recommended as *anti-*corrosion chemicals, these products in fact had just the opposite effect. In the tests, PetroTech's chemicals ate through steel at a rate that experienced industry professionals described as "shocking." Tanos has since learned that PetroTech's products caused similar corrosion at other

operators' wells in the past. PetroTech, however, never advised Tanos of these past incidents, or, to Tanos's knowledge, made efforts to prevent the same result at Tanos's wells.

16. Unfortunately, Tanos utilized PetroTech's products and services on dozens of its other wells throughout Texas. After the testing, Tanos immediately ceased using the suspect chemicals and began the process of identifying potentially affected wells. Tanos's investigation revealed that many other wells utilizing PetroTech chemicals exhibited advanced corrosion like that observed at the CSJ Well. The corrosion found at many of these wellheads was nearly catastrophic and requires full remediation to prevent another blowout. Consequently, Tanos personnel have been required, on an emergency basis, to dedicate substantial time, effort, and resources in an ongoing investigation and remediation of nearly 40 Tanos wells. These efforts are extremely costly but necessary to avoid another blowout. In total, the cost of controlling the CSJ Well and remediating other wells damaged by PetroTech's products is projected to exceed $10 million.

## CAUSES OF ACTION

### Count 1: Breach of Contract

17. Tanos re-alleges and incorporates by reference the facts and allegations set out above, as if fully set forth herein.

18. Tanos and PetroTech entered into a Master Services Agreement.

19. Tanos fully performed its obligations under the Master Services Agreement. As explained in Count 5, *infra*, Tanos has asserted its statutory right to withhold payments allegedly due to PetroTech under the Master Services Agreement pursuant to Texas Business and Commercial Code § 2.717. This does not constitute a breach of Tanos's obligations.

20. In the Master Services Agreement, PetroTech made promises concerning the quality of the goods and services it would provide. PetroTech promised both that it would "perform all services in a workmanlike manner in accordance with generally accepted industry practices" and that its products would "substantially comply with [Tanos's] specifications and be free from defects in material and workmanship." PetroTech breached those promises by delivering defective goods and services that had precisely the opposite effect for which they were marketed and recommended by PetroTech: these products were marketed as *anti*-corrosion chemicals, yet they caused extreme corrosion on approximately 40 of Tanos's wells and a blowout at the CSJ Well.

21. As a direct and proximate result of PetroTech's breach of its contractual promises, Tanos sustained the injuries and losses described herein, including the loss of reserves from the CSJ Well during the blowout, the cost of evacuating area residents, the cost of remediating damage to Tanos's property, and the cost of containing resulting pollution. Tanos was thereby deprived of the benefits it justifiably expected to receive as a result of its contractual relationship with PetroTech. Tanos seeks judgment against PetroTech for damages and attorneys' fees, and all costs allowed by law.

### Count 2: Breach of Warranties

22. Tanos re-alleges and incorporates by reference the facts and allegations set out above, as if fully set forth herein.

23. PetroTech is the designer, manufacturer, marketer, seller, and provider of the chemicals that caused the corrosion of Tanos's wellhead equipment.

24. PetroTech recommended that Tanos utilize the particular chemicals at issue in the amounts at issue as corrosion and scaling inhibitors on Tanos wells.

25. PetroTech expressly warranted that its product was safe for ordinary use when used in compliance with the instructions provided.

26. PetroTech expressly warranted that its services were of good quality.

27. PetroTech's express warranties concerning the quality of its goods and services formed a basis of the bargain for Tanos, without which Tanos would not have purchased PetroTech's goods or services.

28. PetroTech's products and services did not conform to its warranties concerning the quality of those products and services. PetroTech's products had precisely the opposite effect for which they were advertised and recommended and caused extreme corrosion on approximately 40 of Tanos's wells and the blowout of the CSJ Well.

29. As a direct and proximate result of PetroTech's breach of these express warranties, Tanos sustained the injury and losses described herein, including the loss of reserves, production, and profits from the CSJ Well after the blowout and while it was repaired, as well as during the downtime that each corroded well was/is remediated. Tanos seeks judgment against PetroTech for damages and attorneys' fees, and all costs allowed by law.

### Count 3:  Negligence

30. Tanos re-alleges and incorporates the facts and allegations explained above as if fully set forth herein.

31. PetroTech was negligent in developing, designing, manufacturing, testing, selling, and/or marketing the chemicals at issue.

32. PetroTech was negligent in recommending the particular chemicals issued to Tanos and in the other services it provided in relation to those chemicals' use.

33. At all times, Tanos used the chemicals at issue for the foreseeable intended purposes for which they were developed, designed, manufactured, tested, sold, and/or marketed.

34. PetroTech owed a duty to Tanos to use reasonable care in developing, designing, manufacturing, testing, selling, and/or marketing products free from defects in workmanship that were safe and functional for Tanos's use and that did not pose a foreseeable risk of harm to Tanos. PetroTech failed to exercise such reasonable care.

35. PetroTech owed a duty to Tanos to adequately warn of the dangers inherent in the use of the products it developed, designed, manufactured, tested, sold, and/or marketed. PetroTech failed to adequately warn Tanos of the dangers inherent in its products that are the subject of this suit.

36. PetroTech owed Tanos a duty to supervise, train, and exercise control over its agents, contractors, employees, and representatives in the performance of their work and provision of services.  PetroTech failed to do so.

37. PetroTech breached each of these duties to Tanos and its performance fell below standard practices in the oil and gas industry.  Tanos's injuries and damages are the direct and proximate result of PetroTech's negligence and are not due to any act or failure on the part of Tanos.  PetroTech's products had precisely the opposite effect for which they were recommended and caused extreme corrosion on dozens of Tanos's wells and the blowout of the CSJ Well.  Tanos seeks judgment against PetroTech for all direct, indirect, and consequential damages, and attorneys' fees and costs allowed by law.

### Count 4:  Products Liability

38. Tanos re-alleges and incorporates the facts and allegations explained above as if fully set forth herein.

39. PetroTech is the manufacturer, designed, distributor, and/or seller of the chemicals at issue.

40. The chemicals at issue were sold and delivered to Tanos by PetroTech. At all times prior to delivery, the chemicals were in the exclusive control of PetroTech and its agents and employees.

41. The chemicals at issue were used by Tanos as designed and intended by PetroTech, without any change in their condition from the time they left the control of PetroTech until they were used by Tanos.

42. The chemicals at issue were sold and delivered to Tanos by PetroTech in a defective condition that was unreasonably dangerous to Tanos. These defects included, but were not limited to, defects in the design, manufacture, and marketing of PetroTech's products.

43. The chemicals at issue were defective and unreasonably dangerous in that they failed to conform to the product designs and specifications, and such defect was a direct and proximate cause of Tanos's injuries and damages.

44. The chemicals at issue were defective and unreasonably dangerous because there was a lack of adequate warnings and notices as to their dangerous properties, and such defective warnings were a direct and proximate cause of Tanos's injuries and damages.

45. PetroTech's chemicals and services fell below industry standards as designed, manufactured, and marketed by PetroTech. As a direct result of the defective condition of the chemicals at issue, Tanos sustained the injuries and losses described herein. PetroTech's products had precisely the opposite effect for which they were recommended and caused extreme corrosion on dozens of Tanos's wells and the blowout of the CSJ Well. Had the chemicals at issue not been manufactured, designed, distributed, and/or sold by PetroTech in such an

9

unreasonably dangerous condition, these injuries to Tanos's property would not have occurred. Tanos seeks judgment against PetroTech for all direct, indirect, and consequential damages, and attorneys' fees and costs allowed by law.

### Count 5: Declaratory Judgment

46. Tanos re-alleges and incorporates the facts and allegations explained above as if fully set forth herein.

47. PetroTech delivered substantial quantities of the defective chemicals at issue to Tanos, and they were injected into Tanos's wells, in the period before Tanos discovered or reasonably could have discovered the defects in those products and PetroTech's related services.

48. Tanos is entitled to deduct the damages resulting from PetroTech's breaches of contract from any part of the price that may be due under that same contract. Tanos's damages arising from PetroTech's breaches of contract far exceed any contract price that may be due to PetroTech. Simultaneously with the filing of this Petition, Tanos has provided notice to PetroTech of its intention to deduct these damages.

49. Tanos seeks a declaratory judgment that it is entitled to deduct its damages from any price owed PetroTech under the Master Services Agreement pursuant to Texas Business and Commercial Code §2.717. In addition, Tanos seeks attorneys' fees and costs incurred in relation to this declaratory-judgment action under the Texas Civil Practice and Remedies Code.

### DAMAGES

50. As a direct and proximate result of PetroTech's conduct, Tanos has suffered extensive economic damage, property damage and loss, costs in evacuating the surrounding area and losses in an amount projected to exceed $10 million, both as a result of the need to remedy the blowout at the CSJ Well and as a result of the remediation necessary to prevent similar

occurrences at other Tanos wells utilizing PetroTech products. Tanos also suffered loss of reserves and other foreseeable harms as a result of PetroTech's misconduct. Tanos seeks judgment against PetroTech for all these damages, for all attorneys' fees and costs to which it is entitled, and all other relief to which it may be entitled at law or in equity.

## DEMAND FOR JURY TRIAL

51. Tanos asserts its right to a jury trial under Texas Rule of Civil Procedure 216.

## REQUEST FOR DISCLOSURES

Pursuant to Rule 194, PetroTech is requested to disclose, within 50 days of service of this request, the information or material described in Tex. R. Civ. P. 194.2(a) through (l).

## PRAYER FOR RELIEF

FOR THESE REASONS, Tanos respectfully prays that PetroTech be cited to appear and answer herein, that judgment be entered for Tanos against PetroTech upon a final hearing in this matter, and that Tanos be awarded the damages described above and other relief to which it may be justly entitled.

**DATED:   April 28, 2020**

                Respectfully Submitted,

                **GIBBS & BRUNS LLP**

By:   */s/ Mark A. Giugliano*
       Mark A. Giugliano
       State Bar No. 24012702
       mgiugliano@gibbsbruns.com
       Marshal J. Hoda
       State Bar No. 24110009
       mhoda@gibbsbruns.com
       1100 Louisiana, Suite 5300
       Houston, Texas 77002
       Telephone: (713) 650-8805
       Facsimile: (713) 750-0903

                **WARD, SMITH & HILL, PLLC**

By:   */s/ Bruce A. Smith*
       Bruce Smith
       State Bar No. 18542800
       bsmith@wsfirm.com
       Wesley Hill
       State Bar No. 24032294
       wh@wsfirm.com
       1507 Bill Owens Pkwy
       Longview, Texas 75604
       Telephone: (907) 757-6400
       Facsimile:  (903) 757-2323

**ATTORNEYS FOR TANOS EXPLORATION II, LLC**